UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

PHILLIP RANDALL TILLIE #636229,                Case No. 2:25-cv-14

                    Plaintiff,                  Hon. Robert J. Jonker
                                                U.S. District Judge
        v.

UNKNOWN KOBAN, et al.,

                    Defendants.
_____/

## REPORT AND RECOMMENDATION

### I.  Introduction

This Report and Recommendation (R. & R.) addresses Defendants' motion for summary judgment on the basis of exhaustion, Plaintiff's response in opposition, and Plaintiff's affidavit.  (ECF Nos. 16, 18, 19.)  Defendants did not file a reply to Plaintiff's response.

State prisoner – Phillip Randall Tillie – filed an unverified complaint under 42 U.S.C. § 1983 alleging that the two Defendants – Corrections Officer (CO) Gary Koben[1] and Prison Counselor (PC) Ricky Wonnacott – violated his First and Eighth Amendment rights while he was incarcerated at Chippewa Correctional Facility (URF).  (ECF No. 1.)

_____

[1]    Plaintiff filed his complaint against a "C/O Koban."  (ECF No. 1, PageID.2.)  In their motion for summary judgment, Defendants spell CO Koben's name with an "e," rather than an "a."  (ECF No. 16.)  The undersigned shall refer to the Defendant as "Koben" to conform with the preferred spelling of his name.

Tillie says that prior to July 12, 2022, he filed grievances against both Wonnacott and Koben.  (*Id.*, PageID.3.)  Tillie says he was relocated to the west side of URF following attempts at retaliation by staff members.  (*Id.*)

Tillie says that on July 12, 2022, Wonnacott reviewed him on a Notice of Intent to Conduct an Administrative Hearing (NOI).  (*Id.*)  During the review, Wannacott told Tillie that he should "stop writing grievances."  (*Id.*)  Tillie told Wannacott that he believed that the NOI was a form of retaliation, because the "reason for the review had already been handled" two days prior by a CO on the west side of the facility.  (*Id.*)

After the review, Tillie returned to the unit's lobby area.  (*Id.*)  Koben told Tillie, "We've been waiting for you to come back."  (*Id.*)  Tillie continued onwards towards his cell, but Koben called him back to the lobby area for a misconduct ticket.  (*Id.*)  Koben wrote Tillie a misconduct for "[i]nterference with the administration of rules."  (*Id.*)

On July 19, 2022, Koben called Tillie to conduct an administrative hearing on the NOI Wonnacott issued July 12, 2022.  (*Id.*; ECF No. 17-3, PageID.115 (Step I Grievance Response Supplemental Form, Complaint Summary).)  Tillie explained to Wannacott that a hearing conducted by Koben would be improper because Koben did not have the authority to conduct that hearing on the NOI.  (ECF No. 1, PageID.3.) Tillie says that Wannacott encouraged Koben to hold the hearing.  (*Id.*)  During the hearing, Koben told Tillie, "We will teach you about filing grievances."  (*Id.*)  Tillie says he protested and attempted to explain the NOI procedure policy to both

Wannacott and Koben.  (*Id.*)  Koben still conducted the hearing on the NOI.  (*Id.*)
Wannacott said, "We do what we want."

Tillie appealed the hearing and spoke to Acting Deputy Warden Batho about
it.  (*Id.*)  Tillie told Batho he did not receive notice of the initial sanctions related to
the July 19, 2022 NOI, and repeated that the issue had already been handled on the
west side of the facility.  (*Id.*)  Tillie says that on appeal, it was determined that Koben
had improperly conducted the hearing on the NOI.  (*Id.*)

Tillie says that his phone privileges were reinstated on July 20, 2022.  (*Id.*)
Tillie was found not guilty on the July 19, 2022 misconduct ticket.  (*Id.*)

Tillie says that on July 21, 2022, Koben entered his cell, ripped up a state police
complaint and a photo of his mother in retaliation.  (*Id.*)  Later, Koben returned to
Tillie's cell to brag about his actions.  (*Id.*)  While he was there, Koben keyed Tillie's
cell door.  (*Id.*)  Tillie told Koben he would grieve the CO's conduct, but Koben replied,
"Nobody cares about your grievances."  (*Id.*)  Koben knocked over Tillie's books, which
the Plaintiff characterizes as both retaliatory and excessive force in violation of the
Eighth Amendment.  (*Id.*, PageID.3–4.)

On May 22, 2025, the Defendants moved for summary judgment on the basis
of exhaustion.  (ECF No. 16.)  The Defendants argue that (1) Tillie failed to name the
Defendants in one of the potentially relevant grievances, and (2) Tillie's three
grievances naming the Defendants were not addressed on the merits at each step of
the grievance process because they were rejected as untimely or for failure to follow

the policy on filing grievances while on modified access status.   (ECF No. 17, PageID.59−65.)

In the opinion of the undersigned, there exists a genuine dispute of material fact as to whether Tillie properly exhausted his administrative remedies.   Therefore, it is respectfully recommended that that Court deny in part the Defendants' motion for summary judgment.

## II.  Summary Judgment Standard

Summary judgment is appropriate when the record reveals that there are no genuine issues as to any material fact in dispute and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56; *Kocak v. Comty. Health Partners of Ohio, Inc.*, 400 F.3d 466, 468 (6th Cir. 2005).  The standard for determining whether summary judgment is appropriate is "whether the evidence presents a sufficient disagreement to require submission to a jury[2] or whether it is so one-sided that one party must prevail as a matter of law." *State Farm Fire & Cas. Co. v. McGowan*, 421 F.3d 433, 436 (6th Cir. 2005) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)).  The court must consider all pleadings, depositions, affidavits, and admissions on file, and draw all justifiable inferences in favor of the party opposing the motion. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

---

[2]    The Seventh Amendment does not always require courts to submit factual disputes about exhaustion to a jury.  *Lee v. Willey*, 789 F.3d 673, 678 (6th Cir. 2015).  However, when the exhaustion issue is intertwined with the merits of a claim, the Seventh Amendment requires a jury trial on the exhaustion issue.  *Richards v. Perttu*, __ U.S. __, 2025 WL 1698783 (June 18, 2025).

### III.  Verification

In ruling on a summary judgment motion, a court must decide whether a genuine issue of material fact remains. Fed. R. Civ. P. 56(a). The materials a court may consider in making this assessment are identified in Fed. R. Civ. P. 56(c). Courts, however, allow a plaintiff to rely on a "verified complaint," which has "'the same force and effect as an affidavit' for purposes of responding to a motion for summary judgment." *Lavado v. Keohane*, 992 F.2d 601, 605 (6th Cir. 1993) (quoting *Williams v. Browman,* 981 F.2d 901, 905 (6th Cir.1992)).  To qualify as "verified," a complaint must be executed in a manner that meets the requirements set forth in 28 U.S.C. § 1746.  *Id.*  In contrast, complaints that are unverified are not considered Rule 56 evidence.  *Cooper v. Parker*, No. 2:17-CV-00155, 2019 WL 5273967, at *2 (W.D. Mich. Aug. 29, 2019) (citations omitted), *report and recommendation adopted*, No. 2:17-CV-155, 2019 WL 4686423 (W.D. Mich. Sept. 26, 2019).

The undersigned recognizes that pro se plaintiffs, like Tillie, are held to a less stringent pleading standard than parties represented by an attorney.  *Grinter v. Knight*, 532 F.3d 567, 577 (6th Cir. 2008).  At the summary judgment stage, *pro se* plaintiffs are thus not held to the same technical requirements as represented parties.  Still, *pro se* plaintiffs must use common sense in demonstrating there exists a genuine issue of material fact.

A review of the record indicates that Tillie's complaint and response lack declarations of veracity as called for in 28 U.S.C. § 1746. (ECF No. 1; ECF No. 18.)

However, Tillie's affidavit does contain a sufficient declaration of veracity. (ECF No. 19.)  Shown below is the oath of veracity present in Tillie's affidavit:



(*Id.*, PageID.150.)

Neither Tillie's complaint nor his response in opposition may be considered Rule 56(c) evidence.   However, Tillie's affidavit shall be considered Rule 56(c) evidence.

## IV.  Exhaustion of Administrative Remedies

A prisoner's failure to exhaust his administrative remedies is an affirmative defense, which Defendants have the burden to plead and prove.  *Jones v. Bock*, 549 U.S. 199, 212-16 (2007).  "[W]here the moving party has the burden -- the plaintiff on a claim for relief or the defendant on an affirmative defense -- his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party."  *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986). The Sixth Circuit has repeatedly emphasized that the party with the burden of proof "must show the record contains evidence satisfying the burden of persuasion and that

the evidence is so powerful that no reasonable jury would be free to disbelieve it." *Cockrel v. Shelby Cnty. Sch. Dist.*, 270 F.3d 1036, 1056 (6th Cir. 2001).  Accordingly, summary judgment in favor of the party with the burden of persuasion "is inappropriate when the evidence is susceptible of different interpretations or inferences by the trier of fact." *Hunt v. Cromartie*, 526 U.S. 541, 553 (1999).

Pursuant to the applicable portion of the Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997e(a), a prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983 must exhaust his available administrative remedies. *Porter v. Nussle*, 534 U.S. 516, 532 (2002); *Booth v. Churner*, 532 U.S. 731, 733 (2001).  A prisoner must first exhaust available administrative remedies, even if the prisoner may not be able to obtain the specific type of relief he seeks in the state administrative process. *Porter*, 534 U.S. at 520; *Booth*, 532 U.S. at 741; *Knuckles El v. Toombs*, 215 F.3d 640, 642 (6th Cir. 2000); *Freeman v. Francis*, 196 F.3d 641, 643 (6th Cir. 1999). In order to properly exhaust administrative remedies, prisoners must complete the administrative review process in accordance with the deadlines and other applicable procedural rules. *Jones*, 549 U.S. at 218−19; *Woodford v. Ngo*, 548 U.S. 81, 90−91 (2006).  "Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to 'properly exhaust.'" *Jones*, 549 U.S. at 218-19.  In rare circumstances, the grievance process will be considered unavailable where officers are unable or consistently unwilling to provide relief, where the exhaustion procedures may provide relief, but no ordinary prisoner can navigate it, or "where prison administrators thwart inmates from taking advantage of a grievance process

7

through machination, misrepresentation, or intimidation." *Ross v. Blake*, 578 U.S. 632, 644 (2016).

"Beyond doubt, Congress enacted [Section] 1997e(a) to reduce the quantity and improve the quality of prisoner suits." *Porter*, 534 U.S. at 524. In the Court's view, this objective was achieved in three ways. First, the exhaustion requirement "afforded corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case." *Id.* at 525. Second, "the internal review might 'filter out some frivolous claims.'" *Id.* (quoting *Booth*, 532 U.S. at 737*).* And third, "adjudication could be facilitated by an administrative record that clarifies the contours of the controversy." *Id.* When institutions provide adequate notice as required under the PLRA, the opportunity to address the claims internally furthers the additional goals of limiting judicial interference with prison administration. *Baker v. Vanderark*, 1:07-cv-004, 2007 WL 3244075, *5 (W.D. Mich., Nov. 1, 2007).

The most common procedure through which a prisoner in MDOC custody exhausts his administrative remedies is the grievance procedure set forth in Michigan Department of Corrections (MDOC) Policy Directive 03.02.130 (effective March 18, 2019). According to the Policy Directive inmates must first attempt to resolve a problem orally within two business days of becoming aware of the grievable issue, unless prevented by circumstances beyond his or her control. *Id,* ¶ Q. If oral resolution is unsuccessful, the inmate may proceed to Step I of the grievance process and submit a completed grievance form within five business days of the attempted oral resolution. *Id.*, ¶¶ Q, W. The inmate submits the grievance to a designated

grievance coordinator, who assigns it to a respondent.  *Id.*, ¶ Y.  The Policy Directive also provides the following directions for completing grievance forms: "The issues should be stated briefly but concisely.  Information provided is to be limited to the <u>facts</u> involving the issue being grieved (i.e., who, what, when, where, why, how).  Dates, times, places and names of all those involved in the issue being grieved are to be included."  *Id.*, ¶ S (emphasis in original).

If the inmate is dissatisfied with the Step I response, or does not receive a timely response, he may appeal to Step II by obtaining an appeal form within ten business days of the response, or if no response was received, within ten days after the response was due.  *Id.*, ¶ DD.  The respondent at Step II is designated by the policy.  *Id.*, ¶ FF.

If the inmate is still dissatisfied with the Step II response, or does not receive a timely Step II response, he may appeal to Step III using the same appeal form.  *Id.*, ¶¶ HH.  The Step III form shall be sent within ten business days after receiving the Step II response, or if no Step II response was received, within ten business days after the date the Step II response was due.  *Id.*  The Grievance and Appeals Section is the respondent for Step III grievances on behalf of the MDOC director.  *Id.*, ¶ II.

In addition, the grievance policy provides that, where the grievance alleges conduct that falls under the jurisdiction of the Internal Affairs Division pursuant to Policy Directive 01.01.140, the prisoner may file his Step I grievance directly with the inspector of the institution in which the prisoner is housed, instead of with the grievance coordinator, as set forth in ¶ W of Policy Directive 03.02.130.  *Id.*, ¶ R.  In

such instances, the grievance must be filed within the time limits prescribed for filing grievances at Step I.  *Id.*  Regardless of whether the grievance is filed with the grievance coordinator or the inspector, the grievance will be referred to the Internal Affairs Division for review and will be investigated in accordance with MDOC Policy Directive 01.01.140.  The prisoner will be promptly notified if an extension of time is needed to investigate the grievance.  *Id.*

Where the grievance procedures are not available because the issue presented is non-grievable, exhaustion of prison grievance procedures is not required.  It is well-established that a prisoner "cannot be required to exhaust administrative remedies regarding non-grievable issues."  *Figel v. Bouchard*, 89 F. App'x 970, 971 (6th Cir. 2004); *Mays v. Kentucky Dept. of Corrections*, 2018 WL 4603153, at *3 (W.D. Ky. Sept. 25, 2018) ("It is beyond debate that an inmate cannot be required to exhaust administrative remedies regarding non-grievable issues."); *Reeves v. Hobbs*, 2013 WL 5462147 (W.D. Ark. Sept. 3, 2013) ("Defendants cannot treat a complaint as non-grievable, and therefore not subject to the grievance procedure, and then turn around and maintain the claim fails because [the plaintiff] failed to follow the grievance procedure. As the well known proverb states, they cannot have their cake and eat it too.").

However, where other administrative remedies are available, the prisoner is required to exhaust those available remedies prior to filing a federal lawsuit. For example, where an inmate claims that he received a retaliatory false misconduct,

whether a Class I misconduct or a Class II or III misconduct[3], the inmate must first raise the issue during the Misconduct Hearing. *Siggers v. Campbell*, 652 F.3d 681, 693−94. If the inmate is claiming to have received a retaliatory Class I misconduct, he or she must then must "file a motion or application for rehearing [of his misconduct conviction] in order to exhaust his or her administrative remedies before seeking judicial review of the final decision or order." Mich. Comp. Laws § 791.255(1); *see also Siggers*, 652 F.3d at 693−94. Alternatively, if the inmate is claiming to have received a retaliatory Class II or III misconduct, he or she must file an appeal based on retaliation. MDOC PD 03.03.105 ¶¶ UUU-XXX; *see also Jones v. Heyns*, 2014 U.S. Dist. LEXIS 55712 at *13−17 (W.D. Mich. Jan. 28, 2014).

When prison officials waive enforcement of these procedural rules and instead consider a non-exhausted claim on its merits, a prisoner's failure to comply with those rules will not bar that prisoner's subsequent federal lawsuit. *Reed-Bey v. Pramstaller*, 603 F.3d 322, 325 (6th Cir. 2010). The Sixth Circuit has explained:

> [A] prisoner ordinarily does not comply with MDOCPD 130—and therefore does not exhaust his administrative remedies under the PLRA—when he does not specify the names of each person from whom he seeks relief. *See Reed-Bey v. Pramstaller*, 603 F.3d 322, 324-25 (6th Cir. 2010) ("Requiring inmates to exhaust prison remedies in the manner the State provides—by, say, identifying *all* relevant defendants—not only furthers [the PLRA's] objectives, but it also

---

[3]    Violations of written rules within the MDOC are classified as either Class I, Class II or Class III misconducts. Class I consists of the most severe violations, and Class III consists of the least severe. While Class I misconducts are considered "major" misconducts and are "subject to all hearing requirements set forth in MCL 791.252", Class II and III misconducts are considered "minor" misconducts and are "subject to all requirements currently set forth in Department Administrative Rules and policy directives for 'minor' misconducts." MDOC Policy Directive (PD) 03.03.103 ¶ B (eff. date 07/01/18).

prevents inmates from undermining these goals by intentionally defaulting their claims at each step of the grievance process, prompting unnecessary and wasteful federal litigation process."). An exception to this rule is that prison officials waive any procedural irregularities in a grievance when they nonetheless address the grievance on the merits. *See id*. at 325.  We have also explained that the purpose of the PLRA's exhaustion requirement "is to allow prison officials 'a fair opportunity' to address grievances on the merits to correct prison errors that can and should be corrected to create an administrative record for those disputes that eventually end up in court." *Id*. at 324.

*Mattox v. Edelman*, 851 F.3d 583, 590−91 (6th Cir. 2017).[4]

## V. Grievances Identified

In their motion for summary judgment, the Defendants provided Tillie's Step III Grievance Report. (ECF No. 17-3.)  The affidavit included with the report states that it "is taken from the Michigan Department of Corrections' (MDOC) database that tracks all prisoner/parolee grievances filed at Step II, which have been responded to at Step III." (*Id*., PageID.77.)  The Defendants identify four grievances as potentially relevant to Tillie's complaint: URF-22-07-1257-28F (URF-1257), URF-22-08-1405-28E (URF-1405), URF-22-08-1414-28E (URF-1411), URF-22-08-1482-28E (URF-1428). (*Id*., PageID.89−90.)  Screenshots of Tillie's Grievance Report are shown below:

---

[4]    In *Mattox*, the Sixth Circuit held that a prisoner may only exhaust a claim "where he notifies the relevant prison . . . staff" regarding the specific factual claim "giving the prison staff a fair chance to remedy a prisoner's complaints."  *Id*. at 596. For example, grieving a doctor about his failure to give cardiac catheterization did not grieve the claim that the doctor erred by not prescribing Ranexa.



| | Step III Rec'd | Grievance Identifier | Grievance Catagory | Facility | Step I Received Date | Resolved | Partially Resolved | Denied | Rejected | Closed | Date Mailed |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | 10/27/2022 | URF-22-07-1174-28E | 28E | 8 | 7/12/2022 | ☐ | ☐ | ☐ | ☑ | ☑ | 11/14/2022 |
| Notes: | | | | | | | | | | | |
| ✕ | 10/27/2022 | URF-22-08-1482-28E | 28E | 8 | 8/29/2022 | ☐ | ☐ | ☐ | ☑ | ☑ | 11/14/2022 |
| Notes: | | | | | | | | | | | |
| ✕ | 10/27/2022 | URF-22-08-1414-28E | 28E | 8 | 8/19/2022 | ☐ | ☐ | ☐ | ☑ | ☑ | 11/14/2022 |
| Notes: | | | | | | | | | | | |
| ✕ | 10/27/2022 | URF-22-08-1405-28E | 28E | 8 | 8/15/2022 | ☐ | ☐ | ☐ | ☑ | ☑ | 11/14/2022 |

(*Id.*, PageID.89.)

| | Step III Rec'd | Grievance Identifier | Grievance Catagory | Facility | Step I Received Date | Resolved | Partially Resolved | Denied | Rejected | Closed | Date Mailed |
|---|---|---|---|---|---|---|---|---|---|---|---|
| ✕ | 9/9/2022 | URF-22-07-1257-28F | 28F | 8 | 7/21/2022 | ☐ | ☐ | ☐ | ☑ | ☑ | 9/22/2022 |

(*Id.*, PageID.90.)

In his response in opposition, Tillie identifies URF-22-07-1208-27A (URF-1208) as a relevant grievance. (ECF No. 18, PageID.131.) The Grievance Report entry for this grievance is shown below:



| | 8/18/2022 | URF-22-07-1208-27A | 27A | 8 | 7/14/2022 | ☐ | ☐ | ☐ | ☑ | ☑ | 8/31/2022 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Notes: | | | | | | | | | | | |

(ECF No. 17-3, PageID.90.)

## VI. Analysis

Defendants argue Tillie failed to properly exhaust his First and Eighth Amendment claims against the Defendants because he (1) failed to name the

13

Defendants or the incidents alleged at Step I of grievance URF-1482, and (2) although grievances URF-1414, URF-1405, and URF-1257 concerned the incidents alleged in the complaint and named the Defendants, they were not addressed on the merits at each step of the grievance process. (ECF No. 17, PageID.61.) In his unverified response in opposition, Tillie argues (1) that Defendants have failed to identify all pertinent grievances, and (2) that URF-1405 was wrongfully rejected as untimely. (ECF No. 18.) Tillie does not contest Defendants' arguments concerning URF-1257. (*Id.*, PageID.135.)

### A. URF-1208

Tillie argues Defendants failed to identify URF-1208 as a relevant grievance to this complaint. (ECF No. 18, PageID.131−32.) Tillie asserts he properly exhausted his administrative remedies through URF-1208 because (1) its contents are relevant to the claims in his complaint, and (2) the grievance procedure was made unavailable to him because URF-1208 was wrongfully rejected as grieving a misconduct hearing when it was meant to grieve the NOI itself. (*Id.*, PageID.132.) Defendants did not address URF-1208 in their motion for summary judgment and did not file a reply.

Plaintiff does not provide the Court with copies of URF-1208. In his unverified response, Plaintiff states that he grieved the "N.O.I, not a misconduct." (ECF No. 18, PageID.132.) No information is provided as to the date URF-1208 was filed; however, it was received by the Grievance Coordinator on July 14, 2022. (ECF No. 18-1, PageID.139.) Plaintiff does not state who was named in URF-1208, only the incident involved. URF-1208 was rejected at Step I. (ECF No. 18, PageID.132.) Plaintiff

provides a copy of the Step I rejection letter related to URF-1208, which explains that the grievance was rejected because it concerned "issues related to the hearing process." (ECF No. 18-1, PageID.139.)  A screenshot of the rejection is shown below:

**Michigan Department of Corrections**
**GRIEVANCE REJECTION LETTER**

DATE:         **Thursday, July 14, 2022**

TO:           **TILLIE**            636229 LOCATION:  URF        M     324

FROM:         M. McLean, Grievance Coordinator

SUBJECT:      Rejection

Your Step I grievance regarding         **Nongrievable**
was received in this office on   **07/14/22**   and was rejected due to the following reason:

Decisions made in a Class II or Class III misconduct hearing, including property disposition, and issues directly related to the hearing process (e.g., sufficiency of witness statements, timeliness of misconduct review, timeliness of hearing).  Prisoners are provided an appeal process for Class II and Class III decisions pursuant to PD 03.03.105 "Prisoner Discipline." Any future references to this grievance should utilize this identifier:

URF —  22 —  07  —  1208    —  27 A

(*Id.*)

Plaintiff does not state that this grievance was appealed through Step II or through Step III.  No information was provided regarding the contents of the grievance at either of the stages or the dates at which those appeals might have been filed.

Ultimately, the purpose of the grievance system is to alert prison officials to problems within their facilities.  *Curry v. Scott*, 249 F.3d 493, 505 (6th Cir. 2001). Generally, prisoners seeking to exhaust retaliation claims arising out of a misconduct ticket must do so through the process outlined in *Siggers*.  652 F.3d 681, 693−94. Where prisoners have been found not guilty on the ticket at issue, and thus lack the opportunity to raise allegations of retaliation in a hearing, appeal, or rehearing, they

15

must exhaust any claims arising from that ticket through the grievance process. *Reed-Bey*, 428 F. App'x at 501; *Parker v. Turner*, No. 20-12794, 2022 WL 722192, at *4 (E.D. Mich. Mar. 9, 2022).

To provide adequate notice to officials through the grievance process, the grievant must provide facts underlying the issue being grieved including the "names of all those involved" at Step I.  PD 03.02.130 ¶ S.  Issues within the scope of review at Step II and Step III appeals are limited to those issues addressed on the merits at each step of the grievance process.  *See id.*; *Brown v. McCullick*, No. 18-2226, 2019 WL 5436159, at *3 (6th Cir. Apr. 23, 2019).

Tillie asserts that in URF-1208, he grieved the NOI preceding his misconduct hearing rather than the misconduct hearing itself.  (ECF No. 18, PageID.132.)  An NOI gives an inmate notice of the misconduct hearing; thus, it is an issue directly related to the hearing process.  Issues related to the hearing process must ordinarily be raised in the misconduct hearing and on appeal as contemplated in *Siggers*.  652 F.3d 681, 693−94.  Tillie was found not guilty on the relevant misconduct ticket.  (ECF No. 1, PageID.3; ECF No. 17-3, PageID.115.)  As such, Tillie needed to exhaust any claims arising out of the ticket through the grievance process.  *Parker*, 2022 WL 722192, at *4 (citing *Ali v. Simmons*, No. 1:19-cv-126, 2020 WL 6597562, at *5 (W.D. Mich. May 5, 2020)).

In the opinion of the undersigned, there remains no genuine dispute of material fact as to whether Plaintiff properly exhausted his administrative remedies through URF-1208.  The record before the Court shows that he did not.  Assuming

16

that the correct mode of exhaustion for the Plaintiff would have been the grievance process, Plaintiff asserts only that he grieved the NOI issued by Koben, not that he grieved Koben or Wonnacott.  (ECF No. 18, PageID.132.)  Additionally, there is no evidence in the record showing that Plaintiff appealed the grievance through Step III.  The Grievance Report provided by the Defendants indicates that no Step III appeal was filed in relation to URF-1208.  (ECF No. 17-3, PageID.90.)  Because the record does not show that Plaintiff grieved the Defendants or that the grievance was addressed at each step of the grievance process, there remains no genuine dispute of material fact as to exhaustion through URF-1208.

### B. URF-1257

URF-1257 is the first of four grievances identified by Defendants.  The Defendants argue that Tillie failed to properly exhaust his administrative remedies through URF-1257 because the grievance was rejected during the grievance process and was not addressed on the merits at each of the three Steps.  (ECF No. 17, PageID.61.)  In his response in opposition, Plaintiff states he "will not argue (URF-1257)."  (ECF No. 18, PageID.135.)  Thus, in the opinion of the undersigned, there remains no genuine dispute of material fact as to whether Plaintiff properly exhausted his administrative remedies through URF-1257.

### C. URF-1405

Defendants argue Plaintiff failed to properly exhaust his administrative remedies through URF-1405 because the grievance was rejected as untimely at Step II and not addressed on the merits through Step III.  (ECF No. 17,

PageID.61−62.)  Plaintiff argues he did not have to exhaust URF-1405 because the grievance process was made unavailable to him by Grievance Counselor M. McLean following his transfer from URF to St. Louis Correctional Facility (SLF).  (ECF No. 18, PageID.133.)

Tillie states that on July 28, 2022, he was relocated to SLF.  (*Id.*)  Tillie states that while at SLF, he was placed on Modified Grievance Access and was required to request grievance forms.  (*Id.*)  Tillie explains that because he was transferred to SLF, he had to request URF-1405 from URF and it had to be sent to SLF for him to fill it out.  (*Id.*)

On August 2, 2022, Tillie filed URF-1405 at Step I, grieving Koben and Wannacott regarding the NOI and hearing conducted on July 19, 2022, and the resulting loss in his phone privileges.  (ECF No. 17-3, PageID.114.)  Tillie stated that Koben, as a CO, did not have the authority to conduct an administrative hearing on his NOI.  (*Id.*)  Tillie stated that Wannacott told Koben that only a PC, Assistant Resident Unit Supervisor (ARUS), or Resident Unit Manager (RUM) could hold an administrative hearing following an NOI.  (*Id.*)  Tillie alleged Koben and Wonnacott's actions were retaliation for his prior filing of grievances.  (*Id.*)

Step I in URF-1405 is shown below:

18

Date Received at Step I  8-15-22    Grievance Identifier: URF 12 2108 1 1 4 1 05 1 07 A

Be brief and concise in describing your grievance issue.  If you have any questions concerning the grievance procedure, refer to PD 03.02.130 and OP 03.02.130 available in the prison Law Library.

| Name (print first, last) | Number | Institution | Lock Number | Date of Incident | Today's Date |
|---|---|---|---|---|---|
| Tillie | 636229 | URF | 3-243 | 7-19-22 | 8-2-22 |

What attempt did you make to resolve this issue prior to writing this grievance?  On what date? 7-19-20 & 7-20-22
If none, explain why. I spoke directly w/s Koben & P.C. Wonnacott at my Administrative Hearing on 7-20-22 and on 7-19-22. I told P.C. Wonnacott that because he Wrote me the Notice of Intent that he wasn't allowed to review me an An NOI Report that he wrote me and I told Koben that policy URF-O.P. 05.03.130 Prohibited him from Acting As A Hearing officer on An Noticent Intent.

State problem clearly.  Use separate grievance form for each issue.  Additional pages, using plain paper, may be used.  Four copies of each page and supporting documents must be submitted with this form.  The grievance must be submitted to the Grievance Coordinator in accordance with the time limits of OP 03.02.130. This Grievance is being filed Against s/o Koben & P.C. Wonnacott Pursuant to Administrative Rule 791.3310 to Appeal An Administrative Hearing regarding my Phone Restrictions: (See Attached Administrative Hearing Report & Notice of Intent). (60-days restrictions is excessive & Punitive and violates 05.03.130) Pursuant to URF-Chippewa Correctional facility O.P. 05.03.130 (Effective 8-27-21) (Page 1 of 4) (Part III: Telephone Violations) No. 4 & 5 Provides: (4) Reviewing officer. Rum/ARUS/P.C. (5) Rum/P.C.S. Conducts Administrative Hearing and Imposes Appropriate Sanction if the charges are upheld. C/o Koben is not A PC/RUM and had No Authority to Conduct An Administrative hearing on my NOI P.C. Wonnacott directly told Koben in Front of me that he could conduct the hearing And Impose whatever restrictions He wanted. I protested and Complained that only the PC or Rum could Conduct A hearing on A NOI, but because I have written Several Complaints and Grievances Against P.C. Wonnacott and C/o Koben their Actions and Conduct was clearly Arbitrary & Capricious Biased And Unfair and done in Retaliation to further Inflict Mental Abuse & Distress Upon Me. Which is also A violation of P.D. 03.02.130 (L) & P.D. 03.03.130 (I)(6) [Staff shall Avoid the least Appearance of harassment, Retaliation, Reprisals and Penalizations Against A Prisoner who files A Complaint/Grievance Against Staff. Im Requesting that 7-19-22 Arbitrary and Improper hearing _____ _____ and Unauthorized Hearing Be reversed/Overturned and Koben & Wonnacott Be Suspended for violating the above polices And PD.02.03.127(B), (D)(7) and Dept Work Rules #4, 5, 13, 3.    Grievant's Signature

(*Id.*)

On August 23, 2022, URF-1405 was denied at Step I as "resolved."  (ECF No. 17-3, PageID.115.)  The Respondent found that Wonnacott issued Tillie an NOI for using the phone while serving Toplock sanctions.  (*Id.*)  The Respondent stated that "[o]fficers are not allowed to hold Notice of Intent Hearings."  (*Id.*)  The Respondent found that Koben reviewed and held a hearing on the NOI on July 19, 2022, upholding the NOI and placing Tillie on phone restrictions for 60 days.  (*Id.*)  The Respondent stated that the "hearing was held without proper approval of Deputy of Housing. Phone restriction to be remove[d] and phone reinstated."  (*Id.*)  Phone privileges were

19

restored on July 20, 2022.  (*Id.*)  The Step I response was returned to Tillie on August 24, 2022.  (*Id.*, PageID.114.)

Tillie states that he did not actually receive the Step I response on August 24, 2022.  (ECF No. 19.)  Instead, Tillie says that he received the Step I response on September 2, 2022.  (ECF No. 18, PageID.133.)  Tillie says that when he received the response, he wrote to McLean to request a Step II appeal form.  (*Id.*)  McLean *did* send him an appeal form – but for grievance URF-22-07-1174-17c, not URF-1405. (*Id.*)  Tillie says that he requested the Step II forms for URF-1405 on September 2, September 19, and September 25.  (ECF No. 19.)  Tillie states that he received his Step II appeal form on October 2, 2022.  (*Id.*)

Tillie wrote his Step II appeal on October 3, 2022.  (ECF No. 17-3, PageID.112.) Tillie stated "I re-allege all allegations. Issue was resolved at step I. I'm pursuing my step II appeal in order to exhaust my administrative remedies."  (*Id.*)  The Step II appeal was received by the Respondent on October 10, 2022.  (*Id.*)  URF-1405 was rejected at Step II as untimely because the "due date to the coordinator was on 09/09/2022."  (*Id.*, PageID.113.)  The Step II response was returned to Tillie on October 12, 2022.  (*Id.*, PageID.112.)

At Step III, Tillie stated, "I re-allege all allegations: Issue was not resolved at Step I or II. C/O Koben and P.C. Wonnacott violated my first amendment right and retaliated when C/O Koben intentionally conducted a improper hearing NOI and P.C. Wonnacott encouraged and allowed C/O Koben to conduct the NOI hearing."  (*Id.*) Tillie continued, "Grievance Coordinators purposely sent me the Step 2 Appeal forms

after the due date." (*Id.*, PageID.112.)  At Step III, the rejection was upheld.  (*Id.*, PageID.111.)

Prisoners seeking to exhaust retaliation claims arising out of a misconduct ticket must do so through the process outlined in *Siggers*.  652 F.3d 681, 693−94.  Where prisoners have been found not guilty on the ticket at issue they must exhaust any claims arising from that ticket through the grievance process.  *Reed-Bey*, 428 F. App'x at 501; *Parker*, 2022 WL 722192, at *4.  Grievants must provide facts underlying the issue being grieved including the "names of all those involved" at Step I.  PD 03.02.130¶ S.

Tillie was found not guilty of the misconduct ticket and thus was required to exhaust his administrative remedies through the grievance process.  (ECF No. 1, PageID.3; ECF No. 17-3, PageID.115); *Parker*, 2022 WL 722192, at *4 (citing *Ali*, 2020 WL 6597562, at *5).

In URF-1405, Tillie grieved both Defendant Koben and Defendant Wonnacott.  (ECF No. 17-3, PageID.114.)  Tillie grieved what he alleged to be retaliatory conduct by the Defendants that corresponds to the conduct described in his complaint.  (*Id.*)

However, "proper exhaustion" requires that the plaintiff comply with the administrative agency's deadlines and "critical procedural rules." *Woodford*, 548 U.S. at 90−95.  MDOC policy provides that a grievance shall be rejected if filed in an untimely manner.  PD 03.02.130 ¶ (J)(5).  Grievances are considered filed on the date they are received by the Department and must be stamped as such.  *Id.*, ¶ (T).  To be considered timely, the Grievance Coordinator must receive Step II appeals within ten

business days after the grievant receives a Step I response or, if no response is received, within ten business days after the date the response is due.  *Id.*, ¶ (EE).

The Defendants state that URF-1405 was returned to Tillie on August 24, 2022.  (ECF No. 17, PageID.62.)  Defendants state that Tillie's Step II appeal would have been due September 9, 2022 and thus his October 9, 2022 appeal would have been untimely.  (*Id.*)  Thus, Defendants assert that URF-1405 was properly rejected. (*Id.*)

Tillie argues that he was prevented from properly exhausting his administrative remedies by Grievance Coordinator McLean at URF.  (ECF No. 19.) A prisoner need only exhaust *available* administrative processes.  *Ross,* 578 U.S. at 638.   In three rare circumstances, the grievance process will be considered unavailable to prisoners.  This occurs (1) where officers are unable or consistently unwilling to provide relief, (2) where the exhaustion procedures may provide relief, but no ordinary prisoner can navigate them, or (3) "where prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation."  *Id.* at 644.  For an inmate to successfully claim that the grievance process was not "capable of use," they must claim that they hit a "dead end" in the grievance process—not merely that they failed to consider other options.  *Booth,* 532 U.S. at 738; *Ratliff v. Graves*, 761 Fed.Appx. 565, 567 (6th Cir. 2019).

In *Lamb v. Kendrick,* the Sixth Circuit set forth the framework for an exhaustion analysis when the plaintiff alleges that actions of the prison staff

rendered administrative remedies unavailable.  52 F.4th 286 (6th Cir. 2022).  The

Sixth Circuit explained:

> Even if an inmate has evidence to show that an administrative
> procedure was unavailable, he is not automatically absolved from the
> PLRA's exhaustion requirement because this Circuit requires inmates
> to make "affirmative efforts to comply with the administrative
> procedures before analyzing whether the facility rendered these
> remedies unavailable." *Lee v. Willey*, 789 F.3d 673, 677 (6th Cir. 2015)
> (quoting *Napier v. Laurel Cnty.*, 636 F.3d 218, 223 (6th Cir. 2011)).
> "When a prisoner makes affirmative efforts to comply but does not
> succeed, we analyze whether those efforts to exhaust were sufficient
> under the circumstances." *Id.* (quoting [*Risher v. Lappin*, 639 F.3d 236,
> 240 (6th Cir. 2011)]) (internal quotation marks omitted).

*Id.* at 292−93.

Because defendants bear the burden of pleading and proving a plaintiff's

failure to exhaust, "if the plaintiff contends that he was prevented from exhausting

his remedies," the defendant must "present evidence showing that the plaintiff's

ability to exhaust was not hindered." *Id.* at 295 (quoting *Surles v. Andison,* 678 F.3d

452, 457 n.10 (6th Cir. 2012)).

After being transferred to SLF on July 28, 2022, Tillie's only method of

communicating with URF was through mail.  As such, if, as alleged, URF

administrators did not respond to Tillie's letters requesting a Step II appeal form

before the filing deadline, Tillie would have reached a "dead end" in his attempt to

proceed through the administrative process.

Nevertheless, Tillie continued to make affirmative efforts to comply with

administrative procedures.  In his affidavit, Tillie asserts that he sent requests for a

Step II appeal to the Grievance Coordinator on September 2, September 19, and

September 25, but that the Grievance Coordinator sent the Step II form for the

incorrect grievance − grievance URF-22-07-1174-17C.[5]  (ECF No. 18, PageID.133; ECF No. 19.)  Tillie says he did not receive the correct appeal form until October 2, 2022.  (ECF No. 19.)  When Tillie did receive the form, he continued through the remaining steps of the grievance process, filing both a Step II and a Step III appeal despite the delay.  (ECF No. 17-3, PageID.112.)  Defendants have neither denied Tillie's unavailability assertion nor provided evidence to the contrary.

Instead, Defendants assert that Tillie had a duty to challenge the grievance rejection as untimely during the grievance process before filing this lawsuit, citing *Jones v. Bonevelle*, No. 11-2242 (6th Cir. Mar. 30, 2012).  (ECF No. 17, PageID.63.) They assert that because Tillie had previously filed grievances, he should have been aware prior to filing that his Step II grievance would be untimely and thus should mention the issue in his appeal.  (*Id.*)  Tillie did, however, raise the issue of timeliness and his inability to obtain proper forms from the Grievance Coordinator at Step III, saying, "Grievance Coordinators purposely sent me the Step 2 Appeal forms after the due date."  (ECF No. 17-3, PageID.112.)

The problem here is one of timing.  Tillie was moved to a different prison before he received his Step I response.  The record indicates that he continued to pursue his

---

[5]     Plaintiff attaches the Step I grievance response for a grievance filed in 2020 which related to Grievance Counselor McLean's handling of another grievance.  The Investigation Summary notes that McLean had sent Tillie the wrong Step II appeal form in relation to the prior grievance, which resulted in that Step II form being marked as untimely.  (ECF No. 18-2, PageID.142.)  The Respondent found "no evidence that M. McLean violated policy," and found instead that McLean "mistook" Tillie's kite requesting a Step II response.  (*Id.*)  The Warden's officer accepted the Step II appeal after McLean contacted them.  (*Id.*)

administrative remedies but failed to meet the filing deadline, possibly due to mailing delays or a mistake as to the relevant grievance by the Grievance Counselor at URF. Common sense suggests that a prison move in this interval would make timely compliance more difficult and maybe unreasonable.  At this juncture, the undersigned concludes that a genuine issue of material fact remains with respect to these timing issues and Tillie's efforts of to exhaust his First Amendment Retaliation claims against Defendants Wonnacott and Koben.

### D. URF-1414

Defendants argue Plaintiff failed to properly exhaust his administrative remedies through URF-1414 because the grievance was rejected as untimely at Step II and not addressed on the merits through Step III.  (ECF No. 17, PageID.61−62.)  Plaintiff argues he did not have to exhaust URF-1414 because the grievance process was made unavailable to him by Grievance Counselor M. McLean following Tillie's transfer from URF to SLF.  (ECF No. 19, PageID.150.)

At Step I, Tillie grieved Koben for retaliating against him by entering his cell, ripping up his state legal complaint and photos, keying his door, and knocking his books into him on July 21, 2022.  (ECF No. 17-3, PageID.109.)  Tillie made no mention of Wonnacott in the grievance.  (*Id.*)  Tillie filed the grievance on August 4, 2022.  (*Id.*)

Step I in URF-1414 is shown below:

Date Received at Step I  _8-19-22_   Grievance Identifier: |_U_R_F_1_2_2_0_8_1_ _1_1_4_1_ _H_1_ _1_1_7_B_|

Be brief and concise in describing your grievance issue.  If you have any questions concerning the grievance procedure, refer to PD 03.02.130 and OP 03.02.130 available in the prison Law Library.

| Name (print first, last) | Number | Institution | Lock Number | Date of Incident | Today's Date |
|---|---|---|---|---|---|
| Phillip Tillie | 636229 | URF/SLF | B~243 | 7-21-22 | 8-4-22 |

What attempt did you make to resolve this issue prior to writing this grievance? On what date? _7-21-22_
If none, explain why. I tried to resolve issue by explaining to C/O Koben that what he did was assault, C/O Koben showed No Concern.

State problem clearly.  Use separate grievance form for each issue.  Additional pages, using plain paper, may be used.
Four copies of each page and supporting documents must be submitted with this form.  The grievance must be submitted to the Grievance Coordinator in accordance with the time limits of OP 03.02.130. On July 21, 2022 at Approximately 7:00AM I was called to the guard stand for A ticket review, At which time I explained to C/O Koben that I didn't want to participate (Which is my Right) I returned to my cell. C/O Koben came immediately to deliver paper. I then went to chow, at which time C/O Koben went to my cell and took the paper work and decided to rip my (State police Complaint Against him) I returned to the Unit and Around 7:55AM C/O Koben returned to my cell and Keyed the door instead of sliding it under the door like Normal, C/O Koben was extremely MAD about the State Police Complaint and Bragged about how he ripped it up, then explained that I was going to file A grievance about his Conduct, C/O Koben then Knocked over my books causing them all to hit me. I explained to C/O Koben that what he had done was assault. According to policy C/O Koben is suppose to have me step at my cell when ever he enters, but C/O Koben was so furious that he disregarded all Policies & Procedure. I charge C/O Koben with violating P.D. 03.03.130, Employee handbook Rule #5 Conduct UN-becoming #6 Physical Contact #16 Criminal Acts (Felony), #31 Security Precaptions And #32 Attention to duty... This was all done about of Retaliation due to my Previous filed grievances & future State Police Complaint which he ripped.

_____
Grievant's Signature

(*Id.*)

On August 29, 2022, URF-1414 was denied at Step I.  (*Id.*, PageID.110.)  The

Respondent found that "[a]fter investigation and interviewing CO Koben, I have

found no evidence of a violation of policy, or inappropriate actions by CO Koben at

this time."  (*Id.*)  The response was returned to Tillie on August 30, 2022.  (*Id.*,

PageID.109.)

At Step II, Tillie stated that he "re-allege[d] all allegations, issue not resolved

at Step I. C/O Koben clearly entered my cell […] and ripped my state police complaint

which was for him."  (*Id.*, PageID.107.)  He stated this was "clearly a violation of my

26

first amendment right." (*Id.*)  Tillie did not mention Wonnacott at Step II.  (*Id.*)  Tillie filed the Step II appeal on October 3, 2022.  (*Id.*)  The Respondent received the appeal on October 10, 2022.  (*Id.*)  URF-1414 was denied as untimely at Step II because the "due date to the coordinator was on 09/15/2022."  (*Id.*, PageID.108.)  The Step II response was returned on October 12, 2022.  (*Id.*, PageID.107.)

At Step III, Tillie stated that his First and Eighth Amendment rights had been violated by Koben.  (*Id.*)  Tillie stated that "[t]he Grievance Coordinator purposely sent me my Step 2 Appeal form after the due date."  (*Id.*)  The Respondent upheld the rejection at Step III.  (*Id.*, PageID.106.)

As previously stated, to properly exhaust the plaintiff must comply with the administrative agency's deadlines and "critical procedural rules."  *Woodford*, 548 U.S. at 90–95.  MDOC policy provides that a grievance shall be rejected if filed in an untimely manner.  (ECF No. 17-2, PageID.69 (PD 03.02.130 ¶ (J)(5)).)  To be considered timely, the Grievance Coordinator must receive Step II appeals within ten business days after the grievant receives a Step I response or, if no response is received, within ten business days after the date the response is due.  (*Id.*, PageID.73 (¶ DD).)

Tillie argues that he was prevented from properly exhausting his administrative remedies through URF-1414 by Grievance Coordinator McLean. (ECF No. 19.)  Tillie states that McClean did not send him a Step II appeal form before September 15, 2022.  (*Id.*)  He says that he requested the Step II appeal form

on September 2, September 19, and September 25, 2022, but did not receive a form until October 2, 2022. (*Id.*)

As noted above, a prisoner need only exhaust *available* administrative processes. *Ross,* 578 U.S. at 638. Once again, Tillie was moved to a different prison before he received his Step I response. Tillie continued to pursue his administrative remedies but failed to meet the filing deadline, possibly due to a delay by the URF Grievance Counselor. The undersigned concludes that a genuine issue of material fact remains with respect to these timing issues and Tillie's efforts to exhaust his First and Eighth Amendment claims against Defendant Koben.

### E.  URF-1482

Defendants argue that Plaintiff failed to properly exhaust his administrative remedies through URF-1482 because he failed to name either Defendant at Step I, and did not grieve the incidents involved at Step I. (ECF No. 17, PageID.61.) Plaintiff does not address URF-1482 in either his response in opposition or his affidavit.

At Step I, Tillie grieves non-party CO Woodgate for tampering with his property in retaliation for writing grievances and complaints against him. (ECF No. 17-3, PageID.104.) Tillie did not mention either Defendant Wonnacott, Defendant Koben, or an incident relevant to this complaint at Step I. (*Id.*) URF-1482 was denied at Step I. (*Id.*) At Step II, Tillie realleged the same facts against CO Woodgate and stated the issues were not addressed at Step I. (*Id.*, PageID.102.) URF-1482 was rejected as untimely at Step II. (ECF No.103.) At Step III, Tillie realleged the same

facts against Woodgate and asserted there was a conspiracy to cover up the CO's actions. (*Id.*, PageID.102.) The rejection was upheld at Step III. (*Id.*, PageID.101.)

Grievants must provide facts underlying the issue being grieved including the "names of all those involved" at Step I to provide adequate notice to officials. (ECF No. 17-2, PageID.71 (PD 03.02.130 ¶ S).)

In the opinion of the undersigned, Tillie has failed to properly exhaust his administrative remedies as to his First and Eighth Amendment claims against the Defendants through URF-1482. At Step I, Tillie does not mention Defendant Wannacott, Defendant Koben, or incidents relevant to the complaint. Thus, in the opinion of the undersigned, there remains no genuine dispute of material fact as to whether Tillie properly exhausted his administrative remedies through URF-1482, Tillie did not exhaust.

## VI. Recommendation

The undersigned respectfully recommends that this Court **grant in part** and **deny in part** the Defendants' motion for summary judgment. In the opinion of the undersigned, there remains no genuine dispute of material fact as to whether Tillie properly exhausted his administrative remedies through URF-1482, URF-1208, or URF-1257 – he did not. In short, while URF-1208 allegedly grieved the Defendants and relevant events, there is no evidence it was appealed through Step III; URF-1257 was rejected during the grievance process; and URF-1482 grieved neither the Defendants nor the incidents at issue in this case. Although claims raised in URF-1428 and URF-1208 are relevant to the issues and Defendants in this case, they

should not be dismissed because the Plaintiff has properly exhausted his claims through two other grievances analyzed above.

Indeed, there does remain a genuine dispute of material fact as to whether Tillie properly exhausted his administrative remedies through grievances URF-1414 and URF-1405. The claims contained in these two grievances may thus continue forward.

If the Court adopts the undersigned's R. & R., the following claims shall remain in the case:

1. Plaintiff's First Amendment retaliation claims against Defendant Koben and Defendant Wonnacott related to the NOI on July 19, 2022;

2. Plaintiff's First Amendment retaliation claim against Defendant Koben related to the Defendant's alleged entry into Plaintiff's cell, ripping up his state legal complaint and photos, keying his door, and knocking his books into him on July 21, 2022;

3. and Plaintiff's Eighth Amendment claim related to Defendant Koben's July 21, 2022 entry into his cell.

Dated:  August 4, 2025                    /s/ *Maarten Vermaat*
                                          MAARTEN VERMAAT
                                          U. S. MAGISTRATE JUDGE

**NOTICE TO PARTIES**

Any objections to this Report and Recommendation must be filed and served within fourteen days of service of this notice on you.  28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b).  All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b).  Failure to file timely objections may constitute a waiver of any further right of appeal.  *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *see Thomas v. Arn*, 474 U.S. 140 (1985).